STATE OF MISSOURI at the relation of THE CITY OF REPUBLIC, Relator, v. FORREST SMITH, State Auditor.—139 S. W. (2d) 929.

Court en Banc, April 18, 1940.

*Bruce T. DeWitt* and *Fred A. Moon* for relator.

*Roy McKittrick,* Attorney General, and *Covell R. Hewitt,* Assistant Attorney General, for respondent; *Ernest Hubbell* of counsel.

*Arch A. Johnson, amicus curriae.*

TIPTON,. J.—This is an original proceeding in mandamus to compel Forrest Smith, State Auditor of Missouri, to register a bond issued by the city of Republic, a city of the fourth class, for the purpose of providing funds to construct a sewer system. After filing the application for the writ, respondent waived the issuance of the writ, agreed that relator's application and petition might be considered as such writ, and filed his return. The return challenges the validity of an ordinance passed by the city council of relator calling for a bond election to test the sense of the voters in regard to establishing a sewer system; it challenges the validity of an ordinance authorizing the issuance of the bonds after the election; and it challenges the authority of respondent to register the bond while an injunction suit is pending in the circuit court to prohibit the issuance of the bonds, though no temporary injunction had been sought. Relator filed a motion for judgment on the pleadings.

The application of the relator for an alternative writ of mandamus against respondent avers, among other things, the following: That relator is a city of the fourth class under the laws of this State; that it has an adequate water plant and distribution system, but

has no sanitary system and disposal plant; that the Works Progress Administration agreed to expend $72,225 for the construction of a sanitary system, provided relator would contribute $16,500 to complete the project; that on December 11, 1939, the Board of Aldermen passed Ordinance No. 931, calling for a special election for the purpose of submitting to the voters of the city a proposition to increase the indebtedness of the city in the amount of $16,500 to be used in the construction of a sewer system; that pursuant to this ordinance, an election was held January 8, 1940, and the bond issue carried by a vote of 337 for and 126 against incurring the indebtedness; that thereafter, the Board of Aldermen passed Ordinance No. 938, stating the result of the election, issuing the bonds, stating their maturities, prescribing the rate of interest and creating a sinking fund to retire the bonds; that subsequent to the passing of the ordinance it was discovered that the maturity dates of the last four bonds were beyond the constitutional limit of twenty years; that at a special meeting of the Board of Aldermen held February 26, 1940, Ordinance No. 946 was passed which was, in all respects, identical with Ordinance No. 938, except that the maturity dates of the last four bonds were changed so as to comply with the constitutional provision; and that relator has issued its bonds in the aggregate amount of $16,500, and upon proper execution thereof has presented bond No. 1 to respondent for registration as provided by law.

Respondent, by his return, admits each and every allegation of fact alleged in relator's petition. For his further return, respondent bases his refusal to register said bond on the ground that the transcript presented with the bond shows that there is a suit pending in the Circuit Court of Greene County, Missouri, entitled Lon Nance et al. v. City of Republic et al., returnable to the May Term, 1940, of that court. The petition in that court asks for a permanent injunction enjoining the Mayor and Board of Aldermen of relator from issuing and registering this bond issue, from levying and collecting any tax for the payment of interest, and from providing for the creation of a sinking fund for the retirement of said bonds. The return further states that the plaintiffs did not ask for a temporary restraining order against the defendants, yet the pendency of the suit casts a cloud on the validity of the bonds and renders them unsalable and unregisterable in the office of respondent under the facts alleged in the petition of that suit.

The facts alleged in that petition are that W. Harold Owen is the duly elected, qualified and acting Mayor of relator city; that the city of Republic is divided into three wards; that each of the wards is entitled to two aldermen; that T. A. Nelson, B. E. Adams, Paul Williams and John Arrington are the duly elected and acting Aldermen of said city; that E. E. Bales and R. C. Mitchell are acting as members of said Board of Aldermen by appointment of the Mayor

of the city to fill alleged vacancies; that Ordinance No. 931, calling the election on the bond issue involved, was passed in the following manner: On final passage, Aldermen Williams, Bales, Mitchell and Arrington voted for the ordinance, Alderman Nelson voted against the ordinace, and Alderman Adams did not vote, whereupon said ordinance was declared enacted by the Mayor; that one Robert Bell was the duly elected, qualified and acting member of the Board of Aldermen from the third ward; that Bell had not resigned or forfeited his office by any act of his own; that the Mayor had declared the office of Bell vacant and had appointed R. C. Mitchell thereto; that said Ordinance No. 931 was the product of whim and caprice on the part of the Mayor and Board of Aldermen who voted for its passage; that the ordinance is unreasonable and oppressive; and that the city of Republic had not established a sewer system prior to the holding of the bond issue election under Ordinance No. 931.

For his further return and as a ground for his refusal to register said bond, respondent states that Ordinance No. 938 of relator city issuing said bond is void for the reason that the maturity dates of the last four bonds, totaling $2,000, are beyond the twenty year limitation as prescribed by Section 12 of Article 10 of the Constitution of the State of Missouri, thus rendering the entire bond issue under said ordinance void, and that Ordinance No. 946 does not validate the bond for the reason that while by its title it purports to repeal Ordinance No. 938, Ordinance No. 946 does not by its terms expressly repeal Ordinance No. 938.

Ordinance No. 251 repealed Section 109 of Article 5 of Chapter 4 of the Revised Ordinances of Republic, 1916, and enacted in lieu thereof the following section:

"Whenever from any cause, a vacancy shall occur in any elective office, more than six months before the next election, whether said election be the annual or biennial municipal election, the Mayor, or the person exercising the office of Mayor, shall cause a special election to be held to fill such vacancy. In case such vacancy shall occur within less than six months of such annual or biennial election, the Mayor or the person exercising the office of Mayor, shall appoint an eligible and competent person to discharge the duties of such office until his successor is elected at such annual or biennial election."

Respondent has filed a brief admitting that the peremptory writ should be awarded, therefore, we will discuss the issues raised by the pleadings.

■ . Respondent's return raises the question that relator's Board of Aldermen was without authority to pass Ordinance No. 251, giving the Mayor the right to appoint an alderman when a vacancy occurs within six months of a general city election. Of course, relator has only such powers as are conferred upon it by the State. Such powers are found in Article 8, Chapter 38, Sections 6946 to

7090, inclusive, Revised Statutes of Mo. 1929, and amendments thereto. Section 6973 of this article provides, among other things, the following: ''That any vacancy in the office of alderman which may occur within said six months preceding a general municipal election shall be filled in such manner as may be prescribed by ordinance.'' In view of this section of the statute, we are of the opinion that relator had authority to enact Ordinance No. 251.

Section 6949 provides that a ''general election for the elective officers of each city of the fourth class shall be held on the first Tuesday in April next after the origination of such city under the provisions of this article, and every two years thereafter. . . ..'' Section 6951 provides that the mayor and board of aldermen shall be elected by the qualified voters of the city and shall hold office for the term of two years and until their successors are elected and qualified. Under these two sections and Ordinance No. 251, there is no doubt but that the mayor had the power to appoint a qualified person to fill a vacancy on the board of aldermen that occurred within six months prior to the first Tuesday of April, 1940.

Therefore, when Alderman Lee Evans' resignation was accepted by the Mayor and the Board of Aldermen on November 13, 1939, the Mayor had the right to appoint E. E. Bales as Alderman to fill the vacancy created by Evans' resignation. He also had the power to appoint Dr. R. C. Mitchell on December 11, 1939, provided that Alderman Bell's office to which he appointed Dr. Mitchell was vacant. However, respondent's return alleges that Alderman Bell's office was not vacant because he had not resigned, nor had his office been declared forfeited by any court.

It is admitted that the minutes of the Board of Aldermen show that ''because of the removal of Alderman Bell from the city and State, the Mayor declared his office on the Board of Aldermen vacant.'' The qualifications set forth in Section 6964 are that the person elected must be twenty-one years of age, a citizen of the United States, and an inhabitant of the city for one year before he is elected, also a resident of the ward from which he is elected. The St. Louis Court of Appeals in the case of State ex rel. Johnston v. Donworth, 127 Mo. App. 377, 105 S. W. 1055, in construing this section, held that one must not only be a resident of the ward when elected but must remain such during his term of office, and that if he moves out of his ward he may be ousted from such office. Since Alderman Bell moved not only from the ward from which he was elected but also from the city of Republic, he forfeited his office and should have been ousted from it.

Section 6957 provides that ''the mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office, for cause shown, any elective officer, of the city.

. . ." We think there was a substantial compliance with this section and that Dr. Mitchell was legally appointed.

Moreover, we are of the opinion that Dr. Mitchell was at least a *de facto* alderman. "An officer *de facto* is to be distinguished from an officer *de jure,* and is one who has the reputation or appearance of being the officer he assumes to be but who, in fact, under the law, has no right or title to the office he assumes to hold. He is distinguished from a mere usurper or intruder by the fact that the former holds by some color of right or title while the latter intrudes upon the office and assumes to exercise its functions without either the legal title or color of right to such office. Where one is actually in possession of a public office and discharges the duties thereof, the color of right which constitutes him a *de facto* officer, may consist in an election or appointment, holding over after the expiration of his term, or by acquiescence by the public for such a length of time as to raise the presumption of a colorable right by election, appointment, or other legal authority to hold such office. The duties of the office are exercised under color of a known election or appointment which is void for want of power in the electing or appointing body, or for some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public." [McQuillin, Municipal Corporations (2 Ed.), Revised Vol. 2, sec. 500, page 204.]

Dr. Mitchell held his office on the Board of Aldermen under an appointment of the mayor of relator, he exercised the duties of this office under this appointment, and he was held out to the public as an alderman. We are therefore of the opinion that, although Section 6957 may not have been strictly complied with, he was at least a *de facto* officer.

Being a *de facto* officer, Dr. Mitchell's act in voting for Ordinance No. 931, which authorized the bond election in question, is valid and cannot be questioned on that ground. [McQuillin, Municipal Corporations (2 Ed.), Revised Vol. 2, sec. 504, page 214; Kansas City v. McTernan et al., 308 Mo. 494, 273 S. W. 105.]

"The title of one exercising municipal functions and who is acting as a *de facto* officer cannot be attacked collaterally, before the title to the office is determined. Thus the rights of councilmen to act will not be collaterally determined in an action by taxpayers to restrain the council from issuing bonds." [McQuillin, Municipal Corporations (2 Ed.), Revised Vol. 2, sec. 505, page 215. See also, Fly v. Jackson, 226 Mo. App. 203, 45 S. W. (2d) 919, and Eaker v. Common School Dist. (Mo. App.), 62 S. W. (2d) 778.]

We therefore hold that in this mandamus proceeding the title to an office on the Board of Aldermen cannot be collaterally attacked, and that Ordinance No. 931 calling for a special bond election received a majority of the votes of that board. It was therefore legally enacted in accordance with Section 7016, R. S. Mo., 1929.

■ Another question raised by respondent's return as to why the bond should not be registered is that the pendency of a suit in the Circuit Court of Greene County by taxpayers who seek to enjoin relator and its officers from issuing, registering and selling the bonds, is a bar to this mandamus action. "Before a prior suit can be held to bar or stay an action in mandamus, it must at least be made to appear, not only that the parties are the same, but that adequate relief can be obtained in the proceeding first instituted." [State ex rel. Harmony Drainage Dist. v. Hackmann, 305 Mo. 685, 267 S. W. 608, l. c. 612.] Respondent is not a party to the action pending in the Greene County Circuit Court. In that action, returnable to the May, 1940, term, only a permanent injunction is sought. Since the Works Progress Administration had agreed to expend $72,225 on condition that relator would expend $16,500, relator's right to have the bond registered could not be adequately determined in that action, as unreasonable delay would defeat the W. P. A. grant. Moreover, there is no assurance that respondent would register the bond even if the decision in the Circuit Court was in favor of relator. "Mandamus is a short cut by which the matter can be speedily determined. . . ." [Perkins v. Burks, 336 Mo. 248, 78 S. W. (2d) 845, l. c. 848.] We overrule respondent on this contention.

■ The title to Ordinance No. 946 states it is an act to repeal Ordinance No. 938, yet there is nothing in the body of the ordinance specifically stating that it does repeal Ordinance No. 938. Ordinance No. 946 differs from Ordinance No. 938 only in that in the former the maturity dates of the last four bonds are changed so that they will mature within twenty years and, therefore, come within the constitutional provision. We think that Ordinance No. 938 was repealed by implication. Moreover, where there are two acts on one subject, the rule is to give effect to both if possible, but if the two are repugnant in any of their provisions, the later act, without any repealing clause, operates to the extent of the repugnancy as to repeal the first. [Meriwether v. Love, 167 Mo. 514, 67 S. W. 250; City of St. Louis v. Kellmann, 235 Mo. 687, 139 S. W. 443.] We hold that the maturity dates of the bonds are within twenty years and are, therefore, constitutional.

■ Section 7031, R. S. Mo., 1929, gives the cities of the fourth class the power to construct a sewer system. Section 7217 provides that "the various cities, towns and villages in this state, whether organized by special charter or under the general laws of the state, may contract a debt or debts in excess of the annual income and revenue for any such year, for any purpose authorized in the charter of such city, town or village or by any general law of the state, upon the assent of two-thirds of the legal voters of such city, town or village voting at an election held for that purpose. . . ." We

hold that the relator had the power to issue these bonds to build a sewer system.

As all the conditions of the law with respect to the issuance of the bond presented to respondent for registration were complied with, it was his duty to register it. Therefore, the peremptory writ is hereby awarded. All concur.