Cornelius T. M. HENLEY, Plaintiff,

v.

PANHANDLE EASTERN PIPELINE CO., a corporation, Defendant.

No. 9595.

United States District Court
W. D. Missouri, W. D.

Feb. 28, 1956.

Davis, Thompson, Van Dyke & Fairchild, Kansas City, Mo., for plaintiff.

Rogers, Field & Gentry, Kansas City, Mo., for defendant.

WHITTAKER, District Judge.

This matter is now before me upon defendant's motion for a summary judgment.

The question involved is whether plaintiff, Henley,—having been held liable for the wrongful death of defendant's servant, in a prior action by the latter's widow against him in the state court of Johnson County, Kansas—may now maintain this action against defendant,

the deceased's employer, for damages for bodily injuries sustained in the same automobile casualty.

The facts, stated briefly but sufficiently to develop the legal questions involved, are: A truck and trailer belonging to Automobile Transports, Inc., and being driven by its agent, the plaintiff, Henley, in the course and scope of his employment by Automobile Transports, Inc., and an automobile, belonging to defendant, Panhandle Eastern Pipeline Company, and being driven by its agent, Theodore R. Maichel, in the course and scope of his employment by Panhandle Eastern Pipeline Company, collided, on U. S. Highway No. 50 in Johnson County, Kansas, on the 19th day of July, 1949, resulting in the death of defendant's agent, Maichel, and in bodily injuries to plaintiff, Henley.

Thereafter, Maichel's widow filed a suit against Henley and his employer, Automobile Transports, Inc., in the District Court of Johnson County, Kansas, alleging that the collision was caused by the negligence of Henley in attempting "to pass another automobile which was proceeding in the same direction as the defendant (Henley) and which was between the truck of the defendant and the car of the said Theodore R. Maichel, and by reason of which the truck was driven onto the northerly side of the highway and into the path of the automobile of the said Theodore R. Maichel, thereby causing it to collide with the automobile driven by the said Theodore R. Maichel", and alleging that Henley was, at the time and place in question acting as the agent and servant of his co-defendant, Automobile Transports, Inc., and that, under the doctrine of *respondeat superior*, both were liable to the widow in damages for Maichel's wrongful death. The defendants in that action, Henley and Automobile Transports, Inc., answered, denying generally all averments of the complaint. That case was tried by the Court without a jury on the 13th day of June, 1950, and, as shown by an authenticated copy of the judgment filed in this proceeding, resulted in a finding by the Court that the allegations of plaintiff's complaint "are generally true and that the relief therein prayed for should be granted", and resulted in a judgment of the Court in favor of the plaintiff, widow of Maichel, and against both defendants, Henley and Automobile Transports, Inc., in a stated sum.

Subsequently, this action, which had been originally instituted in the Circuit Court of Jackson County, Missouri, was removed to this Court by defendant on February 3, 1955. In it Henley, as plaintiff, seeks a judgment against defendant, Panhandle Eastern Pipeline Company, for damages for the bodily injuries which he sustained in the collision referred to, upon the ground that the collision was caused by the negligence of defendant's agent, Maichel, in the control and operation of defendant's automobile at the time and place in question.

Defendant has moved for a summary judgment, contending that plaintiff is estopped by the verdict and judgment in the prior case from successfully maintaining this action, and in support of that position defendant has filed here, and relies upon, an authenticated copy of the pleadings and judgment in the prior suit mentioned.

Defendant's position, succinctly stated, is that it, not being charged with any independent act of negligence but only with responsibility, under the doctrine of *respondeat superior*, for the negligence of its agent, Maichel, could not be liable to Henley unless Maichel was negligent, and it having been found and adjudged in the prior suit, to which Henley was a party (a defendant) that the collision was caused by the negligence of Henley, and that Maichel was not guilty of any negligence causing, or contributing to cause, the same (implicit in the judgment, because otherwise Maichel's widow could not have recovered in her action against Henley, and Automobile Transports, Inc.), is not, and cannot be held to be, liable to Henley.

On the other hand, plaintiff, mistakenly treating defendant's point as *res judi-*

*cata* (rather than estoppel by verdict or judgment, which really is its point), contends that defendant's position is without merit because (1) the parties are different here, (2) "mutuality" of the judgment is absent here, as the prior judgment was not binding upon defendant, Panhandle Eastern Pipeline Company, and (3) the controlling law of Kansas, where the action accrued, is opposed to defendant's contention.

■ As indicated, the principle here invoked by defendant is not *res judicata*, but is, rather, estoppel by verdict or, sometimes called, estoppel by judgment, and under the principles governing the latter doctrine, identity of parties is not essential to its application, nor is mutuality of the judgment an essential element of the doctrine in a case, such as this, where the liability of a master or principal is entirely vicarious and rests alone upon the conduct of a servant or agent who has been judicially exonerated from negligence in an action to which the present plaintiff was a party.

In Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U.S. 111, at page 127, 32 S.Ct. 641, at page 642, 56 L.Ed. 1009, the Supreme Court declared the law of these circumstances in the following language:

"It is a principle of general elementary law that the estoppel of a judgment must be mutual * * * [citing authorities].

"An apparent exception to this rule of mutuality has been held to exist where the liability of the defendant is altogether dependent upon the culpability of one exonerated in a prior suit, upon the same facts when sued by the same plaintiff. See Portland Gold Mining Co. v. Stratton's Independence, 8 Cir., 158 F. 63, 16 L.R.A.,N.S., 677, where the cases are collected. The unilateral character of the estoppel of an adjudication in such cases is justified by the injustice which would result in allowing a recovery against a defendant for conduct of another,

when that other has been exonerated in a direct suit. The cases in which it has been enforced are cases where the relation between the defendants in the two suits has been that of principal and agent, master and servant, or indemnitor and indemnitee."

The Court continued, 225 U.S. at page 128, 32 S.Ct. at page 642, saying:

"The principle upon which one may avail himself of the effect of a judgment adverse to the plaintiff in a former suit against the immediate actor, is thus stated in New Orleans & N. E. R. Co. v. Jopes, 142 U.S. 18, 24, 27, 12 S.Ct. 109, 35 L.Ed. 919.

" 'It would seem on general principles that, if the party who actually causes the injury is free from all civil and criminal liability therefor, his employer must also be entitled to a like immunity. * * * If the immediate actor is free from responsibility, because his act was lawful, can his employer, one taking no direct part in the transaction be held responsible? * * * The question carries its own answer, and it may be generally affirmed that if an act of an employee be lawful, and one which he is justified in doing, and which casts no personal responsibility upon him, no responsibility attaches to the employer therefor.' "

To the same effect are the Federal cases of Portland Gold Mining Co. v. Stratton's Independence, Ltd., 8 Cir., 158 F. 63, 16 L.R.A.,N.S., 677; Emma Silver Mining Co. v. Emma Silver Mining Co. of New York, C.C., 7 F. 401, 407.

Such is also clearly the law of Missouri. In McGinnis v. Chicago, R. I. & P. R. Co., 200 Mo. 347, 98 S.W. 590, 594, 9 L.R.A.,N.S., 880, the Supreme Court of Missouri, after announcing the foregoing rule, said: "Because of the rule we here announce, it is generally held that, where the action is one involving the doctrine of *respondeat superior*, a judgment in separate actions acquitting the servant bars the action against the mas-

ter and vice versa." To the same effect are the Missouri cases of State ex rel. Gott v. Fidelity & Deposit Co., 317 Mo. 1078, 298 S.W. 83, 87, and Norwood v. Norwood, 353 Mo. 548, 183 S.W.2d 118. Indeed, such is the general law, see 34 C.J., Section 1282, p. 868; 50 C.J.S., Judgments, § 686, and Good Health Dairy Products Corporation of Rochester v. Emery, 275 N.Y. 14, 9 N.E.2d 758, 112 A.L.R. 401.

I find that the Supreme Court of Kansas has determined the question in the same way. In Richardson v. Erwin, 174 Kan. 314, 255 P.2d 641, the facts were that one Noel Erwin, while driving his father's automobile, was involved in a collision with an automobile being driven by one Richardson, which resulted in the death of both Noel Erwin and Richardson. Richardson's administrator filed two suits. One against the administrator of Noel Erwin's estate, for damages for Richardson's death, alleging that the collision was due to Noel Erwin's negligence. The other was against Orda Erwin, father of Noel Erwin, alleging that the father was negligent in permitting his son, a known negligent and careless driver, to have and to drive his automobile. The case against Noel Erwin's administrator was tried and resulted in a verdict and judgment for the defendant. That judgment was affirmed by the Supreme Court of Kansas in In re Estate of Erwin, 170 Kan. 728, 228 P.2d 739. Thereafter, the father, the defendant in the second suit, asked, and was granted, leave to amend, and he did amend, his answer to set up "the outcome and result of the trial of plaintiff's action against Noel's estate, in which Noel was exonerated of all negligence", and to set up "that as any and all liability on the part of defendant father is completely dependent upon the establishment of negligence on the part of Noel, and that as that issue has already been adjudicated and determined in favor of Noel, the plaintiff is estopped from bringing the instant action against the father." [174 Kan. 314, 255 P.2d 643.] The plaintiff moved to strike out these averments from the amended answer and the trial court sustained the motion, and the defendant, father, appealed. The Supreme Court of Kansas reversed, holding that "As between plaintiff and defendant, we hold that those allegations of the answer with respect to the result of plaintiff's action against the estate of defendant's deceased son constitute a valid defense to the instant action, and that portion of the lower court's ruling striking such defense was erroneous." In support of its holding the Supreme Court of Kansas quoted from 50 C.J.S., Judgments, §§ 760 and 765, which quotations were lifted, practically verbatim, from Portland Gold Mining Co. v. Stratton's Independence, and Bigelow v. Old Dominion Copper Mining & Smelting Co., supra.

While the Erwin case did not involve a master-servant, or a principal-agent, relationship, yet the principle there involved was not different. The principle simply is that one who is sought to be held responsible for the negligent act of another is exonerated by a judicial determination (in an action to which such other and the present plaintiff were parties) that such other was not negligent. And this is so whether such other is a known negligent driver who has borrowed an automobile, or is a servant or an agent. Simple logic and common sense permit no other result. It is thus clear that the Supreme Court of Kansas, in the Erwin case, has decided this very point and its ruling is in harmony with the general rule.

But plaintiff says that he was without any remedy against defendant, Panhandle Eastern Pipeline Company, in the earlier action in the Kansas court, because he could not have counterclaimed against it there for the reason that it was not a party; and even if it had been a party he could not have obtained valid service of process upon it. While, I think, those contentions are immaterial to the question of whether plaintiff is precluded by the Kansas judgment, I believe plaintiff is mistaken, for Section 60–712 of the General Statutes of Kan-

sas 1949, expressly provides that the Court may add a new party when it appears necessary to the decision of a counterclaim, and Section 8–401 of the General Statutes of Kansas 1949, provides for service of process upon non-residents in respect of motor vehicle accidents occurring on the highways of that state, and, thus, plaintiff, Henley, could have asserted a counterclaim against, and could have perfected valid service of process upon, Panhandle Eastern Pipeline Company in the Kansas case.

██ But plaintiff further says that, even if he could have counterclaimed against Panhandle in the Kansas case he did not have to do so, because, under the Kansas law, counterclaims are not "compulsory", and are not lost by non-assertion in a pending action. While this appears to be true so far as the Kansas *statutes* are concerned, that fact does not affect the principle that one, who withholds filing of his counterclaim, may lose it, in the event of an adverse result in the pending suit, under principles of *res judicata* or of estoppel by judgment. This point was queried by the Supreme Court of Kansas in the case of Salina Coca-Cola Bottling Corporation v. Rogers, 171 Kan. 688, 237 P.2d 218, 224, where the Court, in dealing with the question of whether a counterclaim was properly filed or should be stricken, said: "If defendant failed in this action to assert the countcrclaim would such failure constitute *res judicata* under our decisions in the event she later filed an independent action for the same relief? Obviously that question is not directly before us now and we shall not pursue it. It is sufficient now to say it was proper to assert it in this action." While, as stated, the Kansas *statutes* do not make counterclaims compulsory, yet one, by withholding his counterclaim from the pending suit, takes a chance, under the principle of *res judicata* and of estoppel by judgment, of being precluded from later maintaining an independent suit thereon if the first action determines the question of fault or liability adversely to him.

██ The conclusion must be, and is, that because defendant's agent, Maichel (in whose shoes his widow stood in prosecuting the prior suit, St. Louis & S. F. R. Co. v. Dewees, 8 Cir., 153 F. 56, 65) was exonerated of negligence in a prior suit against Henley involving this very collision, and because no independent act of negligence is charged against defendant but it is sought to be held solely because of the alleged negligence of Maichel, who has been exonerated, plaintiff, Henley, is precluded from successfully maintaining this action against defendant upon the principle of estoppel by judgment, and under the exception to the rule of "mutuality", in cases like this, declared in the cases cited, and defendant's motion for a summary judgment in its favor must be sustained.

It is, therefore, ordered and adjudged by the court, that defendant's motion for a summary judgment in its favor be, and it is hereby, sustained, and judgment is hereby entered in this cause in favor of the defendant.